IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CABELA'S WHOLESALE, LLC,<br><br>               Plaintiff,<br><br>    vs.<br><br>ISAAC CHAVEZ,<br><br>               Defendant. | CV 23-41-M-DLC-KLD<br><br><br>FINDINGS AND<br>RECOMMENDATION |

Plaintiff Cabela's Wholesale, LLC brings this action seeking judicial review of a decision by the Montana Human Rights Commission ("MHRC") on Defendant Isaac Chavez's claim of discrimination based on vaccination status. Chavez is proceeding pro se, and represented himself throughout the administrative proceedings. Cabela's moves for summary judgment on the ground that Montana's statute prohibiting discrimination related to vaccination status, Mont. Code Ann. § 49-2-312, was preempted during the relevant period by an emergency temporary standard issued by the Occupational Safety and Health Administration ("OSHA") in response to the COVID-19 pandemic. For the reasons discussed below, Cabela's motion should be granted.

I.      Background

The Montana legislature passed House Bill 702, codified at Mont. Code Ann. § 49-2-312, during the 2021 legislative session. The law, which took effect on May 7, 2021, makes it an unlawful discriminatory practice for "an employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment based on the person's vaccination status or whether the person has an immunity passport." Mont. Code Ann. § 49-2-312(1)(b). An "immunity passport" is a "document, digital record, or software application indicating that a person is immune to a disease, either through vaccination or infection and recovery." Mont. Code Ann. § 49-2-312(5)(a). The statute defines "vaccination status" as "an indication of whether a person has received one or more doses of a vaccine." Mont. Code Ann. § 49-2-312(5)(b).

On November 5, 2021, OSHA issued an emergency temporary standard ("the ETS") to protect unvaccinated employees of large employers by strongly encouraging vaccination. 86 Fed. Reg. 61402 (Nov. 5, 2021). The ETS required all employers with at least 100 employees to "develop, implement, and enforce a mandatory COVID-19 vaccination policy, with an exception for employers that instead adopt a policy requiring employes to either get vaccinated or elect to undergo regular COVID-19 testing and wear a face covering at work in lieu of vaccination." 86 Fed. Reg. 61402. Unvaccinated employees who did not comply

with the ETS's requirements were to be "removed from the workplace." 86 Fed.

Reg. 61532. Covered employers were required to comply with most provisions of

the ETS by January 10, 2022. *Emergency Temporary Standard, Fact Sheet:*

*COVID-19 Vaccination and Testing ETS*, U. S. Department of Labor, OSHA,

https://www.osha.gov/sites/default/files/publications/OSHA4161.pdf (last visited

May 15, 2024) ("OSHA Fact Sheet").

The ETS was quickly challenged in the courts, and on November 6, 2021,

the Fifth Circuit Court of Appeals issued a stay barring OSHA from enforcing the

ETS. *BST Holdings, L.L.C. v. Occupational Safety and Health Admin., U.S. Dept.*

*of Labor*, 17 F.4th 604 (5th Cir. 2021). All cases challenging the ETS were then

consolidated in the Sixth Circuit Court of Appeals, which dissolved the stay on

December 17, 2021. *In re MCP No. 165*, 21 F.4th 357 (6th Cir. 2021). The ETS

remained in effect until January 13, 2022, when the United States Supreme Court

stayed the ETS pending completion of judicial review. *National Federation of*

*Independent Business v. Dept. of Labor, Occupational Safety and Health Admin.,*

595 U.S. 109 (2022).

In accordance with the ETS, Cabela's implemented a COVID-19

Vaccination, Testing, and Face Covering Policy ("the Temporary Policy") in

January 2022.[1] (Doc. 18 at ¶ 19; Doc. 5-2 at 3). The Temporary Policy required all

_____

[1] Chavez did not file a Statement of Disputed Facts in opposition to Cabela's

Cabela's employees to disclose their vaccination status, and if an employee refused

to do so, or disclosed that they were unvaccinated, the employee was required to

wear a face mask in the workplace and test for COVID-19 weekly. (Doc. 18 at ¶

19; Doc. 5-2 at 3).

Chavez applied for and received an offer of employment as a part-time

Firearms Specialist at Cabela's Kalispell, Montana store. (Doc. 18 at ¶ 20; Doc. 5-

2 at 4). On or about January 10, 2022, Chavez reported to Cabela's Kalispell,

Montana store for his new employee orientation.[2] (Doc. 18 at ¶ 21; Doc. 5-2 at 3).

During the orientation, a Cabela's representative explained to Chavez that Cabela's

had a Temporary Policy in place requiring all employees to either provide proof of

a COVID-19 vaccination or wear a mask and submit to regular COVID-19 testing.

(Doc. 18 at ¶ 19; Doc. 5-6 at 38). Chavez refused to disclose his vaccination status,

and stated that he would not wear a mask at work or submit to COVID-19 testing.

(Doc. 18 at ¶¶ 22-23; Doc. 5-1 at 2; Doc. 5-2 at 4; Doc. 5-6 at 38). Cabela's

---

motion for summary judgment. Under Local Rule 56.1(d), "[f]ailure to file a
Statement of Disputed Facts will be deemed an admission that no material facts are
in dispute." The facts taken from Cabela's Statement of Undisputed Facts (Doc.
18) are deemed undisputed to the extent they are not contradicted by other parts of
the record.

[2] Although Chavez alleged in his administrative complaint that the relevant events
occurred on January 10, 2022 (Doc. 5-1 at 2), Cabela's submitted records
reflecting that the events actually took place on January 11, 2022 (Doc. 5-6 at 35,
38). Because this discrepancy is not material to the analysis, the Court accepts the
date identified by Chavez for purposes of this motion.

advised Chavez that if he refused to comply with the Temporary Policy he could

not work at its store. (Doc. 18 at ¶ 24; Doc. 5-1 at 2; Doc. 5-2 at 4). Chavez left

Cabela's and did not return. (Doc. 18 at ¶ 25). On January 13, 2022, Cabela's

rescinded its Temporary Policy in light of the United States Supreme Court's

decision in *National Federation* staying the ETS. (Doc. 18 at ¶ 26).

On January 14, 2022, Chavez filed a complaint of discrimination with the

Montana Department of Labor and Industry, Human Rights Bureau ("MHRB"),

alleging a single discrimination claim based on vaccination status under Mont.

Code. Ann. § 49-2-312. (Doc. 18 at ¶ 27; Doc. 5-1). On February 15, 2022,

Cabela's submitted a Statement of Position to the MHRB, arguing that at all times

relevant to Chavez's complaint, the ETS preempted Mont. Code Ann. § 49-2-312.

(Doc. 18 at  ¶ 28; Doc. 5-6 at 34-54). On July 7, 2022, a MHRB investigator issued

a Final Investigative Report finding reasonable cause to believe unlawful

discrimination occurred as alleged in Chavez's complaint. (Doc. 18 at  ¶ 19; Doc.

5-6 at 56-58). Chavez's case was then referred to the Office of Administrative

Hearings, and Cabela's moved to dismiss the complaint pursuant to Montana Rule

of Civil Procedure 12(b)(6) for failure to state a claim for relief. (Doc. 18 at  ¶¶ 30-

31; Doc. 5-6 at 60-72).

The Hearing Officer granted Cabela's motion, concluding that Chavez failed

to state a claim for relief because Mont. Code Ann. § 49-2-312 was preempted by

the ETS at all times relevant to the complaint. (Doc. 18 at 8 ¶ 33; Doc. 5-2 at 11).

The Hearing Officer first determined that the Montana statute was expressly

preempted because the ETS, a Frequently Asked Questions section on the OSHA

website,[3] and the Federal Register included explicit language expressly preempting

conflicting state laws. (Doc. 5-2 at 6-8). The Hearing Officer further concluded

that the regulatory language of the ETS impliedly preempted Mont. Code. Ann. 49-

2-312 because it would have been impossible for Cabela's to comply with both the

ETS and Montana law. (Doc. 5-2 at 8-9).

Following the decision entered by the Hearing Officer, Chavez timely

appealed to the Montana Human Rights Commission ("MHRC"). (Doc. 18 at ¶ 34;

Doc. 5-4 at 1). On March 27, 2023, the MHRC issued a Remand Order remanding

the case back to the Hearing Officer. (Doc. 18 at  ¶ 36; Doc. 5-12). The MHRC

determined that the Hearing Officer did not have the power to rule that a state law

was preempted, reasoning that "[c]onstitutional questions, such as federal

preemption of a state law, are properly decided by a judicial body, not an

administrative official, under the constitutional principles of separation of powers."

(Doc. 18 at  ¶ 35; Doc. 5-12 at 2). The MHRC concluded that the Hearing Officer's

conclusion that the ETS preempted Mont. Code Ann. § 49-2-312 was incorrect,

---

[3] *Emergency Temporary Standard, Frequently Asked Questions,*  U. S. Department
of Labor, OSHA, https://www.osha.gov/coronavirus/ets2/faqs (last visited May 15,
2024) ("OSHA FAQs").

and remanded the case to the Office of Administrative Hearings (OAH) for further proceedings. (Doc. 18 at ¶ 36; Doc. 5-12 at 3).

On April 26, 2023, Cabela's filed its Complaint in this case, seeking judicial review of the MHRC's decision. (Doc. 1). Cabela's invokes the Court's diversity and federal question jurisdiction, and seeks judicial review pursuant to Mont. Code Ann. § 2-4-702. (Doc. 1 at ¶¶ 5, 9). Cabela's asks the Court to reverse the MHRC's decision and order a complete dismissal of Chavez's complaint. (Doc. 1 at 10-11).

Where the prerequisites for federal diversity jurisdiction are met, federal courts have subject matter jurisdiction over cases involving "on-the-record review of a Montana administrative agency decision." *BNSF Ry. Co. v. O'Dea*, 572 F.3d 785, 791 (9th Cir. 2009). To establish diversity jurisdiction, there must be complete diversity of citizenship between the parties and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332.

Cabela's identifies itself in the Complaint as "a foreign limited liability corporation with its registered agent in Lincoln, Nebraska," and the record reflects that Chavez, who has a Montana address on file with the Court, is a Montana citizen. Cabela's asserts that "the amount in controversy exceeds $75,000," (Doc. 1 at ¶ 5) and the record reflects that Chavez asserted in the administrative proceedings that "he is owed $100,000 in damages from Cabela's." (Doc. 5-5 at 1).

Because the prerequisites for federal diversity jurisdiction are satisfied, this Court

has subject matter jurisdiction.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary

judgment "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). Summary judgment motions are "particularly appropriate where, as here,

review is on the administrative record." *State of Montana v. U.S. E.P.A.*, 941

F.Supp. 945, 956 (D. Mont. 1996) (citing *Adams v. United States*, 318 F.2d 861,

865 (9th Cir. 1963)).

The district court reviews a final administrative decision to determine

"whether the agency's findings of fact are clearly erroneous and whether the

agency's interpretation and application of law are correct." *Denke v. Shoemaker*,

198 P.3d 284, 294 (Mont. 2008).

"A factual finding is clearly erroneous if it is not supported by substantial

evidence in the record, if the fact-finder misapprehended the effect of the evidence,

or if a review of the record leaves the court with a definite and firm conviction that

a mistake has been made." *Denke*, 198 P.3d at 295. The "standard of review for an

administrative agency's conclusions of law is whether its interpretation of the law

was correct." *Cambra Foods Ltd. v. Mont. Dep't of Revenue*, 925 P.2d 855, 856

(Mont. 1996).

In general, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Morin v. Nielsen*, 2020 WL 6701423 (citing *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986)). In the summary judgment context, however, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt. *Morin*, at 2 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted)).

## III.   Discussion

The Court begins with an issue that is not raised by the parties, but is addressed in the analogous state court case that is the subject of a notice of supplemental authority by Cabela's, *Qlarant Integrity Solutions, LLC v. Nicholas Guthneck*, Cause No. ADV-2023-483, issued by the Montana First Judicial District Court, Lewis and Clark County, on March 28, 2024. (Doc. 24). In *Qlarant,* the respondent Nicolas Guthneck filed a MHRB complaint against Qlarant alleging discrimination in employment based on vaccination status in violation of Mont. Code Ann. § 49-2-312. (Doc. 24-1 at 3). The federal regulation at issue in *Qlarant* was Executive Order 14042, which required employees of covered federal contractors, including Qlarant, to obtain Covid-19 vaccinations. (Doc. 24-1 at 2). Qlarant implemented a mandatory vaccination policy requiring its employees to

submit proof of vaccination, and discharged Guthneck after he would not disclose

his vaccination status. (Doc. 24-1 at 3-4).

The MHRB transferred Guthneck's complaint to the OAH, and Qlarant

moved to dismiss on the ground that EO 14042 preempted Mont. Code Ann. § 49-

2-312. (Doc. 24-1 at 4). The hearing officer granted the motion, and Guthneck

appealed to the MHRC. (Doc. 24-1 at 4). The MHRC remanded the case to the

OAH, concluding that the hearing officer did not have the authority to determine

whether EO 14042 preempted the Montana statute because the issue was

"constitutional in nature and could only be decided by a judicial body." (Doc. 24-1

at 4).

Qlarant filed a petition for judicial review of the MHRC's remand order in

the Montana First Judicial District Court, Lewis and Clark County. (Doc. 24-1 at

4). Before addressing the merits, the court found that although the MHRC's

remand order was not a final agency decision, it was reviewable pursuant to Mont.

Code Ann. § 2-4-701, which provides that a preliminary "or intermediate agency

action or ruling is immediately reviewable if review of the final agency decision

would not provide an adequate remedy." The court reasoned that remanding the

preemption "issue to the hearing officer while specifically rejecting the hearing

officer's authority" to resolve the issue would be futile. Because the preemption

issue was determinative, and MHRC had determined that the issue was

unresolvable at the agency level, the court concluded it was appropriate to review

the agency's "intermediate decision before requiring the parties to participate in

further proceedings at the agency level." (Doc. 24-1 at 6).

The same is true here. The MHRC determined that the Hearing Officer did

not have the authority to address whether Mont. Code Ann. § 49-2-312 was

preempted by federal law. The MHRC characterized the preemption issue as a

constitutional one, which could only be "decided by a judicial body, not an

administrative official, under the constitutional principles of separation of powers."

(Doc. 5-12 at 2). As in *Qlarant*, the preemption issue is dispositive and remanding

this matter to the Hearing Officer to resolve an issue that the agency has said the

Hearing Officer does not have the authority to address would be futile. The

MHRC's remand order is thus reviewable under Mont. Code Ann. § 2-4-701.

Cabela's contends that the MHRC erred in concluding that the Hearing

Officer did not have authority to address the preemption issue and in remanding

this matter to the OAH on that basis. The Court agrees.

As in *Qlarant*, the MHRC in this case characterized the preemption issue as

a constitutional one and relied on *Jarussi v. Board of Trustees*, 664 P.2d 316

(Mont. 1983) to conclude that the Hearing Officer did not have the authority to

decide that the ETS preempted Mont. Code Ann. § 49-2-312. The MHRC cited

*Jarussi* for the proposition that "[c]onstitutional questions, such as federal

preemption of a state law, are properly decided by a judicial body, not an administrative official, under the constitutional principle of separation of powers." (Doc. 5-12 at 2). *Jarussi* is distinguishable, however, in that it discussed the constitutional right to observe a school board meeting and simply recognized that the doctrine requiring exhaustion of administrative remedies does not apply to constitutional issues, which are properly addressed by the courts. *Jarussi*, 664 P.2d at 318.

Here, as in *Qlarant*, the MHRC erred in framing Cabela's preemption argument as a constitutional challenge to the validity of Mont. Code Ann. § 49-2-312. (Doc. 24-1 at 7). Cabela's does not challenge the general validity of the statute, but rather argues the ETS preempted the statute as to employers in Cabela's position.  Concluding that the ETS "preempted the Montana statute under the facts of this matter would have no effect on the validity of" the statute, and the MHRC was not called on to determine the constitutionality of  the statute or the ETS. (Doc. 24-1 at 7). Because the issue of whether the ETS preempted Mont. Code Ann. § 49-2-312 is a matter of statutory interpretation, the Hearing Officer had the authority to make that determination and the MHRC erred in holding otherwise.

Cabela's argues, and the Court agrees, that the Hearing Officer correctly concluded that Chavez's discrimination claim fails as a matter of law because the

ETS expressly and impliedly preempted Mont. Code Ann. § 49-2-312 during the relevant period.[4]

Federal law, including federal regulations,[5] may preempt state law under the Supremacy Clause of the United States Constitution in three ways: "(1) express preemption; (2) field preemption (sometimes referred to as complete preemption); and (3) conflict preemption." *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003). Field preemption and conflict preemption are both forms of implied preemption. *Ting*, 319 F.3d at 1135-36. Cabela's argues that express and conflict preemption both apply here.

Express preemption applies when Congress has indicated "its intent to displace state law through express language." *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010). Where Congress has enacted an express preemption provision, the court's "task is to interpret the provision and 'identify the domain expressly pre-empted by that language,'" using "the text of the provision, the surrounding statutory framework, and Congress's state purposes in enacting the statute to determine the proper scope of an express preemption provision." *Chae*, 593 F.3d at

---

[4] As noted above, it is not clear whether the events giving rise to Chavez's discrimination claim took place on January 11, 2022 or January 12, 2022. Because the ETS was in effect on both dates, the result here is the same regardless of which date is accurate.

[5] *See Hillsborough Cnty. v. Auto. Med. Labs., Inc.*, 471 U.S. 707, 713 (1985) (federal regulations may preempt state law).

942 (citations omitted). "Conflict preemption occurs where (1) it is impossible to comply with both federal and state law, or (2) where the state law stands an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1103 (9th Cir. 2016).

Cabela's first contends that the ETS expressly preempted Mont. Code Ann. § 49-2-312 as evidenced by the plain text of the regulatory language, OSHA publications, and statements of intent in the Federal Register. Cabela's is correct.

The ETS contained a clear statement of OSHA's intent to preempt contrary state laws.[6] The ETS stated that it was:

> intended to establish minimum vaccination, vaccination verification, face covering, and testing requirements to address the grave danger of COVID-19 in the workplace, and to preempt inconsistent state and local requirements relating to these issues, including requirements that ban or limit employers' authority to require vaccination, face covering, or testing, regardless of the number of employees.

29 C.F.R. § 1910.501(a). Consistent with the regulatory language, the OSHA FAQs explained, in part, that the "ETS preempts States, and political subdivisions of States, from adopting and enforcing workplace requirements relating to the occupational safety and health issues of vaccination, wearing face coverings, and

---

[6] A federal agency, like OSHA, that is "acting within the scope of its congressionally delegated authority may preempt state regulation and hence render unenforceable state or local laws that are otherwise not inconsistent with federal law." *City of New York v. F.C.C.*, 486 U.S. 57, 63-64 (1988) (internal citations omitted).

testing for COVID-19, except under authority of a Federally-approved State Plan…" *Emergency Temporary Standard, Frequently Asked Questions*, U.S. Department of Labor, OSHA, https://www.osha.gov/coronavirus/ets2/faqs at 1A (last visited May 14, 2024). As expressed in the Federal Register, OSHA intended for the ETS to preempt conflicting state laws and specifically mentioned Montana HB 702, which created Mont. Code. § 49-2-312. 86 Fed. Reg. at 61507-08. OSHA explained that "state restrictions of this kind are clearly preempted whether they take the form of direct workplace regulation or are part of a law of general applicability because they relate to the issues addressed by this standard and conflict with it." 86 Fed. Reg. at 61508.  *See also National Federation Independent Business*, 595 U.S. 109, 113 (2022) (recognizing that the ETS "requires that covered workers receive a COVID-19 vaccine, and it pre-empts contrary state laws."). As argued by Cabela's, the Hearing Officer correctly concluded based on clear expressions of OSHA's intent that the ETS expressly preempted Mont. Code Ann. § 49-2-312.

The Hearing Officer was also correct in concluding that the ETS implicitly preempted Mont. Code Ann. § 49-2-312 because Cabela's was unable to comply with both the federal regulation and the Montana statute. The ETS required large employers to gather information about their employees' vaccination status. 86 Fed. Reg. at 61552. The ETS required covered employers to remove any employees

15

who were unvaccinated or refused to disclose their vaccination status from the workplace, or require those employees to wear a mask and submit to weekly Covid-19 testing. 86 Fed. Reg. at 61532.

The Hearing Officer correctly reasoned that the ETS's requirements directly conflicted with Mont. Code Ann. § 49-2-312, which makes it an unlawful discriminatory practice to determine a condition of employment based on vaccination status, thereby prohibiting an employer from requiring its employees to disclose their vaccination status and from requiring employees to wear masks if they refused to do so.  (Doc. 5-2 at 8).

Because the Hearing Officer correctly concluded that Chavez's discrimination claim was preempted by the ETS, and the MHRC erred in concluding that the Hearing Officer did not have authority to address the preemption issue, Cabela's motion for summary judgment should be granted.

## IV.   Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that Cabela's Motion for Summary Judgment (Doc.  16) be GRANTED and this case be remanded to the MHRC with instructions to dismiss Chavez's claim.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the

parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 29th day of May, 2024.

_____
Kathleen L. DeSoto
United States Magistrate Judge